## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**CHRISTIAN BADILLO-HERNÁNDEZ**<br><br>Defendant. | Crim. No. 24-148 (ADC) |

### REPORT AND RECOMMENDATION

On April 17, 2024, Defendant Christian Badillo-Hernández was charged with violations of 18 U.S.C. § 922(o) and 18 U.S.C. § 922(g)(1). Docket No. 1. Defendant filed a Motion for Dismissal, Suppression of Evidence, and Request for Evidentiary Hearing. Docket Nos. 19, 22. The United States opposed at Docket No. 27. The matter was referred to the undersigned for a Report and Recommendation. Docket No. 20. An evidentiary hearing was held on December 12, 2024 and January 8, 2025. See Docket Nos. 35, 40. The Government presented the testimonies of Puerto Rico Police Bureau ("PRPB") Officers David López-Sánchez and David J. Rosado-Rivera. Documentary evidence was admitted. Post-hearing briefs were received. Docket Nos. 52-53. After carefully considering the evidence and arguments, the undersigned recommends that Defendant's motion to suppress at Docket No. 19 be **DENIED**.

### I.    Factual Background

The following account is drawn from the credible evidence received during the evidentiary hearing.

On March 5, 2024, PRPB agents López-Sánchez and Rosado-Rivera were informed of a work plan to investigate Defendant pursuant to information that had been provided to the PRPB. According to the information received and communicated to López-Sánchez and Rosado-Rivera, Defendant, who was under federal probation and prohibited from carrying weapons, was armed and drove a gray Maserati with license plate ILA-827. Transcript of Hearing on December 12, 2024 ("Tr. 12.2024") at 13 ¶¶ 7-25, 63 ¶¶ 10-20. According to the information, Defendant

United States v. Badillo-Hernández
Criminal No. 24-148 (ADC)
Report and Recommendation

frequented a cockfight arena called La Guanina in Guaniquilla Ward in Aguada ("La Guanina").
Id. Defendant was identified by the nickname of "Sumo" and agents were shown a photograph of
the Defendant. Tr. 12.2024 at 14 ¶¶ 5-9. López-Sánchez was assigned an unmarked vehicle of the
PRPB to conduct surveillance and a radio, and was directed to corroborate the information. Tr.
12.2024 at 15 ¶¶ 9-20, 64 ¶¶ 11-13. Rosado-Rivera was assigned a marked vehicle of the PRBP
and a radio, and was to intervene with the Defendant once the information was corroborated. Tr.
12.2024 at 64 ¶¶ 13-25. López-Sánchez arrived at La Guanina to initiate surveillance at around
10:00 p.m. on March 5, 2024. Tr. 12.2024 at 17 ¶¶ 18-20. There were many vehicles in the parking
area of La Guanina but the area was well illuminated. Id. Defendant arrived at approximately 11:20
p.m. and parked his Maserati, blocking some of the vehicles parked in front of La Guanina. Tr.
12.2024 at 21 ¶¶ 14-23. Defendant entered La Guanina. Tr. 12.2024 at 22 ¶¶ 5-6. López-Sánchez
used the radio to inform Rosado-Rivera and the rest of the PRPB team assigned to the work plan
that Defendant arrived at La Guanina. Tr. 12.2024 at 65 ¶¶ 11-15. Sometime after midnight (around
12:20 a.m.), Defendant came out of La Guanina to move his car. Tr. 12.2024 at 23 ¶¶ 16-20, 24 ¶¶
16-25. When Defendant stepped out of the car after moving it, López-Sánchez saw that Defendant
was carrying a black firearm in his right hand, that he placed the firearm on the right side of his
waist, and that he covered the area of his waist with his shirt. Tr. 12.2024 at 25 ¶¶ 5-12, 53 ¶¶ 12-
24. Due to safety concerns, López-Sánchez decided not to intervene with the Defendant at that
time. Tr. 12.2024 at 25 ¶¶ 22-24. Defendant entered La Guanina again. Tr. 12.2024 at 25 ¶¶ 5-12.
López-Sánchez notified the other PRPB agents by radio, including Rosado-Rivera, that he had
seen Defendant and that he had a firearm on the right side of his waist. Tr. 12.2024 at 26 ¶¶ 23-25,
27 ¶ 1, 65 ¶¶ 17-22. At approximately 1:00 a.m., Defendant came out of La Guanina and López-
Sánchez again observed that he had a firearm, which he removed from his waist with his right
hand before getting into the vehicle to leave. Tr. 12.2024 at 27 ¶¶ 10-14, 56 ¶¶ 9-13. López-
Sánchez informed the other agents by radio that Defendant was leaving La Guanina. Tr. 12.2024
at 27 ¶¶ 15-19, 66 ¶¶ 16-23. López-Sánchez followed the Defendant to a nearby gas station, where
he saw the PRPB patrol car that was ready to intervene with the Defendant. Tr. 12.2024 at 28 ¶¶
22-25, 29 ¶¶ 1-9; Transcript of Hearing on January 8, 2025 ("Tr. 1.2025") at 13 ¶¶ 11-13. For
safety reasons, López-Sánchez told the agents, including Rosado-Rivera, not to intervene with the
Defendant at the gas station and to follow him instead. Id. The PRPB vehicle in which Rosado-

2

United States v. Badillo-Hernández
Criminal No. 24-148 (ADC)
Report and Recommendation

Rivera was travelling, followed the Defendant's Maserati to the Jardines de Aguada Public Housing Project and then to the Aguada Gardens Public Housing Project. Tr. 12.2024 at 32 ¶¶ 3-11, 33 ¶¶ 1-4.

Defendant drove and parked near the area where the administration office of the Aguada Gardens Public Housing Project is located. Tr. 12.2024 at 68 ¶¶ 15-19; Tr. 1.2025 at 17 ¶¶ 5-9. The area was well illuminated. Tr. 12.2024 at 74 ¶¶ 1-3. When Rosado-Rivera arrived, Defendant was outside of the car with the driver's door open. Tr. 12.2024 at 69 ¶¶ 18-25. Defendant appeared to be looking for something in the floor next to the car. Id. Rosado-Rivera approached the Defendant, identified himself as a police officer, and told him that he was under arrest. Tr. 12.2024 at 70 ¶¶ 1-13. Rosado-Rivera also imparted verbal Miranda warnings to Defendant. Id. Defendant informed Rosado-Rivera that he did not have a weapons permit but that he was not armed. Tr. 12.2024 at 70 ¶¶ 14-18. Defendant also said he was looking for his wallet, which he had dropped. Rosado-Rivera saw the wallet on the floor. Tr. 12.2024 at 70 ¶¶ 14-25. While bending down to pick up the wallet, Rosado-Rivera looked to his right and saw a black firearm in the driver's seat of the car. Tr. 12.2024 at 70 ¶¶ 24-25, 71 ¶¶ 1-12. Rosado-Rivera saw that the firearm had a device, which allowed it to fire automatically. Id. He also saw an open fanny pack, with an extended black magazine protruding from the bag. Id. Defendant was arrested and given Miranda warnings again. Tr. 12.2024 at 71 ¶¶ 13-25. The evidence found in the car was seized. Id. The seized evidence included a firearm with a device that allowed it to shoot automatically, three magazines, and ammunition. Government Exhibit 5A.

II.     Discussion

A.     Probable Cause to Arrest the Defendant

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. A Fourth Amendment seizure occurs when a police officer restrains the liberty of a citizen through physical force or show of authority. United States v. Camacho, 661 F.3d 718, 725 (1st Cir. 2011) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). In keeping with the Fourth Amendment, probable cause is a prerequisite for the arrest of any given person and the resulting deprivation of liberty rights. While the preference is for such a probable cause determination to be made by a judge prior to the arrest, an arrest may be valid if executed without a warrant when the arresting officer has probable cause to believe that a crime has been or is being committed. Gerstein v. Pugh,

United States v. Badillo-Hernández
Criminal No. 24-148 (ADC)
Report and Recommendation

420 U.S. 103, 113 (1975) (citations omitted); <u>Virginia v. Moore</u>, 553 U.S. 164, 171, 178 (2008); <u>United States v. Mulkern</u>, 49 F.4th 623, 629 (1st Cir. 2022). Probable cause is a "practical, nontechnical" concept. <u>Gerstein</u>, 420 U.S. at 112. It "is not a high bar"— it requires weighing probabilities and considering "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." <u>Gerstein</u>, 420 U.S. at 121 (citations omitted); <u>Mulkern</u>, 49 F.4th at 629 (citation omitted).

Relevant to the inquiry in this case is the collective knowledge principle. Courts can consider "the collective knowledge of several officers" when assessing whether arresting officers had sufficient facts to conclude that there was probable cause that a crime had been or was being committed and to justify a warrantless arrest. <u>Mulkern</u>, 49 F.4th at 630 (<u>quoting</u> <u>United States</u> v. <u>Cruz-Rivera</u>, 14 F.4th 32, 44 (1st Cir. 2021)). This allows the Court to determine the existence of probable cause by examining the "collective information known to the law enforcement officers participating in the investigation rather than isolate the information known by the individual arresting officer." <u>United States v. Azor</u>, 881 F.3d 1, 8 (1st Cir. 2017) (<u>citing</u> <u>Illinois v. Andreas</u>, 463 U.S. 765, 772 n.5 (1983)); <u>United States v. Fiasconaro</u>, 315 F.3d 28, 36 (1st Cir. 2002)). The collective knowledge principle may apply both in the context of finding reasonable suspicion for an investigatory stop and probable cause for an arrest. <u>United States v. Barnes</u>, 506 F.3d 58, 62–63 (1st Cir. 2007); <u>United States v. Cook</u>, 277 F.3d 82, 86 (1st Cir. 2002); <u>United States v. Cruz-Rivera</u>, 14 F.4th 32, 44 (1st Cir. 2021) (<u>citing</u> <u>United States v. Hensley</u>, 469 U.S. 221, 231–32 (1985)); <u>Barnes</u>, 506 F.3d at 62–63); <u>Mulkern</u>, 49 F.4th at 630–32.

The basis for the probable cause to arrest Defendant on March 6, 2024, rested on the following factual determinations. Prior to surveillance, López-Sánchez and Rosado-Rivera were informed that Defendant was on federal probation and prohibited from possessing a firearm. The information received by PRPB was that Defendant drove a gray Maserati with license plate ILA-827 and would arrive armed at La Guanina. As part of the work plan, López-Sánchez conducted surveillance at La Guanina. There, López-Sánchez twice observed Defendant carrying a firearm. At that point, López-Sánchez had sufficient knowledge to rise to the level of the required probable cause for an arrest as he observed Defendant illegally possessing a firearm.[1] López-Sánchez

---

[1]    Defendant argues that the PRPB could not rely on the credibility of the information provided by the informant. However, as established during the hearing, the probable cause of López-Sánchez was independently

decided not to intervene with the Defendant at that time but to follow him instead. And López-Sánchez was not required to immediately intervene with Defendant, especially when he thought that intervening at La Guanina would pose security concerns. "[W]hen probable cause exists, the timing of an arrest is a matter that the Constitution almost invariably leaves to police discretion." Azor, 881 F.3d at 9–10 (quoting United States v. Winchenbach, 197 F.3d 548, 554 (1st Cir. 1999) ("Our case law makes clear that law enforcement is not required to arrest a suspect immediately upon development of probable cause.")). López-Sánchez's decision to not intervene immediately and follow the Defendant does not negate the probable cause that already existed at that time. Id.

The evidence received during the hearing established that Rosado-Rivera had been informed of the circumstances that made it illegal for Defendant to possess a firearm (Tr. 12.2024 at 63 ¶¶ 10-20), that Rosado-Rivera had been assigned a marked PRPB car and had been tasked with intervening with the Defendant once the information provided to PRPB had been corroborated (Tr. 12.2024 at 28 ¶¶ 22-25, 64 ¶¶ 10-25), and that López-Sánchez informed Rosado-Rivera, and other agents involved in the work plan, that he had observed Defendant carrying a firearm and leaving La Guanina in his car (Tr. 12.2024 at 26 ¶¶ 23-25, 27 ¶ 1, 65 ¶¶ 17-22). Rosado-Rivera followed López-Sánchez's directive not to intervene with the Defendant at the gas station (Tr. 12.2024 at 29 ¶¶ 1-9, 67 ¶¶ 1-6) and instead intervened and arrested Defendant once he parked in the Aguada Gardens Public Housing Project. Rosado-Rivera could rely on the knowledge of López-Sánchez to conclude that there was probable cause to arrest the Defendant.

As discussed by the First Circuit in Balser, collective knowledge can be deemed vertical or horizontal. United States v. Balser, 70 F.4th 613, 619 (1st Cir. 2023) (citations omitted). Vertical collective knowledge is when one officer that has acquired probable cause directs another who lacks probable cause to make an arrest based on his knowledge. Id. (quoting United States v. Meade, 110 F.3d 190, 193 (1st Cir. 1997)). Horizontal collective knowledge is when not one single officer has knowledge of sufficient facts for probable cause but the aggregate of all the information available to the officers are pooled to find probable cause for an arrest. Id. (quoting Winchenbach, 197 F.3d at 555). In this last scenario, there is not one officer that has all the information needed for probable cause. Id. Although the application of horizontal collective knowledge has caused

---

obtained through his knowledge of the circumstances of the Defendant (i.e., Defendant was legally prohibited from possessing firearms) and his observations that night.

**United States v. Badillo-Hernández**
**Criminal No. 24-148 (ADC)**
**Report and Recommendation**

pause, relying on vertical collective knowledge for a finding of probable cause has not posed significant concerns. Id. at 620.

As Defendant concedes, the facts of this case fall squarely within the purview of the vertical collective knowledge principle. See Docket No. 53 at p. 7. During surveillance at La Guanina, López-Sánchez corroborated that Defendant, who had been previously identified as a person who was legally prohibited from carrying a firearm, was armed. López-Sánchez shared that information with Rosado-Rivera, who was in the marked PRPB vehicle and was tasked with intervening with Defendant upon corroboration of the information by López-Sánchez. The probable cause obtained by López-Sánchez can be imputed to Rosado-Rivera. See e.g., Balser, 70 F.4th at 614-21 (DEA agent had sufficient facts to find probable cause for the arrest of the defendant and state police officer directed to stop the car by DEA was properly deemed to have collective knowledge of probable cause to conduct a traffic stop and seize the car); United States v. Rodríguez-García, 2023 WL 5672699, at *5–6 (D. Mass. Sept. 1, 2023) (officers provided with suspect vehicle's make and model, the likely presence of evidence of a crime within the vehicle, and the vehicle's direction and location; collective knowledge could be imputed).

Defendant argues that the radio communications to Rosado-Rivera were insufficient to impute collective knowledge and that Rosado-Rivera had to request permission from a superior to arrest Defendant or inquire as to additional facts surrounding the surveillance operation. Docket No. 53 at p. 8. But Defendant does not explain why this is so and cites no case law in support of these contentions. And the testimony of both witnesses confirmed that Rosado-Rivera knew that Defendant was legally prohibited from possessing firearms and was relayed López-Sánchez's firsthand corroboration that Defendant was armed. The testimony of both witnesses also confirmed that, while López-Sánchez was instructed to conduct surveillance, Rosado-Rivera, who was assigned a marked patrol car, was instructed (assuming corroboration of the information) to effectuate the intervention. The vertical collective knowledge principle applies to these facts. See United States v. De Jesús-Ortiz, 2024 WL 4212292, at *8 (D.P.R. Sept. 17, 2024) (agent observed drug transaction by defendant, informed other officers of the drug transaction by defendant (driver of the car), and of the license plate, make, model, and color of defendant's car— sufficient to deem

**United States v. Badillo-Hernández**
**Criminal No. 24-148 (ADC)**
**Report and Recommendation**

it a directive and properly impute probable cause to intervention team pursuant to the collective knowledge doctrine). There was probable cause for Rosado-Rivera to arrest the Defendant.[2]

      **B.    Seizure of the Evidence Found in Defendant's Car**

Having found that Defendant's arrest was supported by probable cause, I examine the seizure of the firearm, magazines, and ammunition found in Defendant's car. Defendant's argument for suppression of that evidence was premised solely on the purported illegality of the arrest. The Government relies on the plain view and automobile exceptions to the warrant requirement. I find that the plain view doctrine and the automobile exception both apply, and that consequently the seizure of the firearm, magazines, and ammunition found in Defendant's car did not violate his Fourth Amendment rights.

The firearm and one of the extended magazines seized by Rosado-Rivera were in plain view. It is well settled that searches conducted without a warrant are *per se* unreasonable under the Fourth Amendment. Coolidge v. New Hampshire, 403 U.S. 443, 454–55 (1971). But some exceptions may apply. Id.; Texas v. Brown, 460 U.S. 730, 735–36 (1983) (listing exceptions). The plain view doctrine is one. As originally conceived by the U.S. Supreme Court in Coolidge, the plain view doctrine required that the officer conducting the search be lawfully at the place where the evidence was seen, that the evidence be discovered inadvertently, and that the incriminating nature of the evidence be immediately apparent. Brown, 460 U.S. at 737 (discussing Coolidge requirements). These requirements were later modified in Horton, which established that the evidence recovered in plain view did not have to be inadvertently discovered. Horton v. California, 496 U.S. 128, 130 (1990). As more recently described by the First Circuit, the doctrine "permits the warrantless seizure of an item if the officer is lawfully present in a position from which the item is clearly visible, there is probable cause to seize the item, and the officer has a lawful right of access to the item itself." United States v. Hernández-Mieses, 931 F.3d 134, 140 (1st Cir. 2019) (quoting United States v. Gamache, 792 F.3d 194, 199 (1st Cir. 2015)). The first element of the test is straightforward and easy to apply. The second element of this test— that there be probable cause to seize the item— has been interpreted as requiring that the incriminatory nature of the

---

[2] The Government argued that PRPB officers also had reasonable suspicion to intervene with Defendant. But because I have found that there was probable cause to arrest, it is not necessary to discuss whether the officers had reasonable suspicion. See De Jesús-Ortiz, 2024 WL 4212292, at *9 (citing United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001)).

seized items be immediately apparent. See United States v. Keleher, 516 F.Supp.3d 162, 167-168 (D.P.R. Jan. 28, 2021) (citations omitted) (discussing three tests articulated by the First Circuit to apply the plain view doctrine); United States v. Mercedes-Abreu, 2020 WL 1030727, at *4 (D.P.R. Feb. 28, 2020). And the third element— that the officer has a lawful right of access to seized property— is said to be met "when the officers have legal access to the seized property while acting pursuant to some exception to the Warrants clause." Brown, 460 U.S. at 738. One recognized example is when the investigating officer has gained access to the seized property through a lawful Terry stop. United States v. Jones, 187 F.3d 210, 221 (1st Cir. 1999) (citations omitted). This element has also been understood to require that the investigating officer refrain from accessing the seized property by trespassing private property. Keleher, 516 F. Supp. 3d at 168 (quoting United States v. Allen, 573 F.3d 42, 51 n.4 (1st Cir. 2009)); see Horton, 496 U.S. at 137 ("not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself. As the United States has suggested, Justice Harlan's vote in *Coolidge* may have rested on the fact that the seizure of the cars was accomplished by means of a warrantless trespass on the defendant's property."). Because there is no question that at the time of the seizure Rosado-Rivera and Defendant's car were at a public parking area of the Aguada Gardens Public Housing Project, Rosado-Rivera had probable cause to effectuate the warrantless arrest of the Defendant in that same place, and there is no evidence of trespassing by Rosado-Rivera, I deem the third element met and will turn my attention to the first two elements of the test. Keleher, 516 F. Supp. 3d at 168.

The testimony of Rosado-Rivera established that, upon arriving at the Aguada Gardens Public Housing Project, he observed that Defendant had parked his car next to the administration office of the public housing project and that Defendant was outside standing next to the car with the driver's door open. It was then that Rosado-Rivera approached the Defendant to arrest him. The interaction between Rosado-Rivera and Defendant took place in a public area of the public housing project. Rosado-Rivera was thus lawfully present next to Defendant's car at the time of the seizure and could seize any items that were clearly visible if he had probable cause. Gamache, 792 F.3d at 199 (what controls is that the evidence be clearly visible from the officer's lawful vantage point); Allen, 573 F.3d at 51-52 (plain view applied to evidence seen in car parked in public street).

Rosado-Rivera testified that Defendant informed him that he was searching for a wallet and that he did not have a weapons permit. And that when Rosado-Rivera bent down to pick up Defendant's wallet, he looked inside the car. At that point, Rosado-Rivera saw the black firearm and the extended magazine protruding from a fanny pack in the driver's seat. See Brown, 460 U.S. at 739-40 (the use of a flashlight and the fact that officer changed positions to peek inside car is irrelevant to Fourth Amendment analysis). The driver's door was open and, as testified by Rosado-Rivera, the area was well illuminated. United States v. Sánchez-Maysonet, 2024 WL 396663, at *3 (D.P.R. Feb. 2, 2024) (considering testimony of illumination and visibility, and finding application of plain view doctrine). The incriminating evidence was clearly visible to Rosado-Rivera.

Before seeing the firearm and the magazine in the driver's seat of Defendant's car, Rosado-Rivera knew that Defendant was prohibited from possessing firearms and that he had possession of a firearm while at La Guanina earlier that night. Rosado-Rivera was also informed by the Defendant that he did not have a weapons permit. See Keleher, 516 F.Supp.3d at 172-73 (we look at the information known to the officer at the time of the seizure). And, upon seeing the firearm, Rosado-Rivera's training and experience allowed him to identify the firearm as having a device that allowed it to fire automatically. See Tr. 12.2024 at 71 ¶¶ 1-12. Brown, 460 U.S. at 742-43 (officer's training and experience relevant to determine whether the incriminating nature of the evidence is apparent). The incriminating nature of the firearm and the magazine protruding from the fanny pack in the driver's seat were immediately apparent to Rosado-Rivera. The plain view doctrine applies to the seized firearm and magazine.

Because the fanny pack in the driver's seat of Defendant's car was open, the seizure of the other two magazines and ammunition found inside the bag may have also been justified under the plain view doctrine. See United States v. Arroyo-Medina, 2015 WL 13729917 *8 (D.P.R., May 5, 2015) (cases "where container is open or transparent— 'the contents of the package will be open to 'plain view,' thereby obviating the need for a warrant.'") (citation omitted). But those were also legally seized under the automobile exception. "The automobile exception permits a warrantless search of a vehicle if there is probable cause to believe that evidence of a crime or contraband will be found in the vehicle." Hernández-Mieses, 931 F.3d at 145 (citing United States v. Kennedy, 881 F.3d 14, 18 (1st Cir. 2018)). Upon seeing the firearm and protruding magazine in plain view,

**United States v. Badillo-Hernández**
**Criminal No. 24-148 (ADC)**
**Report and Recommendation**

having knowledge that Defendant was legally prohibited from possessing a firearm, and considering Defendant's admission that he did not have a weapons permit, Rosado-Rivera had probable cause to believe that Defendant's car contained evidence of a crime. The search of the car for that evidence was permitted under the automobile exception. United States v. Ross, 456 U.S. 798 (1982); See e.g., Kennedy, 881 F.3d at 18; United States v. Simpkins, 978 F.3d 1, 5 (1st Cir. 2020) (warrantless search of passenger compartment and trunk valid when officers had objectively reasonable belief that defendant had contraband in his vehicle). The evidence seized from Defendant's car on the night of his arrest should not be suppressed.

### III.    Conclusion

For the reasons discussed, I find that there was probable cause to arrest Defendant on March 6, 2025, and that the evidence found in Defendant's car was legally seized. Because Defendant's arguments to suppress incriminating statements were anchored exclusively on the alleged Fourth Amendment violations (see Tr. 1.2025 at 28-32) and I have found that no such violations occurred, there are no grounds to suppress Defendant's statements. I recommend that Defendant's motion to suppress at Docket No. 19 be **DENIED.**

**IT IS SO RECOMMENDED.**

This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have fourteen (14) days to file any objections to this Report and Recommendation. Failure to file timely and specific objections may be deemed waived by the District Court and claims not preserved by objections may be precluded on appeal. See Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Davet v. Maccarone, 973 F.2d 22, 30-31 (1st Cir. 1992); Henley Drilling Co. v. McGee, 36 F.3d 143, 150 (1st Cir. 1994).

In San Juan, Puerto Rico, this 10th day of July, 2025.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge